USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/23/25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
ADAM ZOIA, :
:
                              Plaintiff, :
:
            -against- :    24-CV-2190 (VEC)
:
:    OPINION
UNITED HEALTH GROUP INC., UNITED :
HEALTHCARE SERVICES, INC., UNITED :
HEALTHCARE, INC. & UNITED :
HEALTHCARE INSURANCE COMPANY, :
:
                            Defendants. :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

       Adam Zoia, who was enrolled in a health insurance plan (the "Plan") administered by Defendants United Health Group Inc., United Healthcare Services, Inc., United Healthcare, Inc., and United Healthcare Insurance Company (collectively, "Defendants"), sued Defendants seeking reimbursement for a claim he submitted for air ambulance transport from Boise, Idaho to NYU Langone Medical Center ("NYU Langone") following a horrible skiing accident. Second Amended Complaint ("SAC"), Dkt. 26. Plaintiff asserts a single claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. SAC ¶¶ 77–90.

       Defendants moved to dismiss the SAC in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Defs. Mot., Dkt. 32. Plaintiff opposed the motion. *See* Pl. Opp., Dkt. 39. Defendants' motion to dismiss is GRANTED.

I.   **BACKGROUND**[1]

   A. **Plaintiff's Accident and Medical Condition**

On March 17, 2022, while on a skiing vacation in Idaho, Plaintiff sustained serious injuries when he fell off a cliff. SAC ¶ 38.[2] Plaintiff was taken to Saint Alphonsus Hospital ("Saint Alphonsus") in Boise, Idaho, which has a Level II Trauma Center. *Id.* ¶ 39. Although the medical team at Saint Alphonsus stabilized some of Plaintiff's fractures, he required specialized treatment that is available only at a Level I Trauma Center that offers quaternary care. *Id.* ¶¶ 3, 41. The SAC alleges that Idaho, which has no Level I Trauma Centers, had no medical center that could provide such care. *Id.* ¶¶ 4, 40. The SAC also alleges that only the multidisciplinary team at NYU Langone could provide the care Plaintiff required. *Id.* ¶ 43.

Given Plaintiff's medical condition and the need for advanced life support, the only medically-acceptable way to transport him from Saint Alphonsus to an appropriate trauma center was by air ambulance. *Id.* ¶¶ 44, 47. On March 22, 2022, an air ambulance transported Plaintiff from Saint Alphonsus to NYU Langone, where he underwent multiple surgeries. *Id.* ¶¶ 48, 51. Plaintiff was subsequently moved to NYU Langone's Rusk Rehabilitation where he received months of inpatient and outpatient rehabilitation. *Id.* ¶¶ 52–53.

---

[1] The well-pled facts alleged in the SAC are assumed true for purposes of evaluating Defendants' motion to dismiss. *See Nielsen v. Rabin*, 746 F.3d 58, 61 (2d Cir. 2014). The facts are taken from the SAC and any documents incorporated by reference.

[2] Plaintiff sustained severe head, brain, and spinal injuries, multiple other orthopedic injuries, eye trauma, and acute respiration failure, among other injuries. SAC ¶ 38.

### B. Insurance Coverage

On May 20, 2022, Plaintiff submitted a claim to Defendants in the amount of $611,590 for his air transport.[3] *Id.* ¶ 80. On January 9, 2023, Defendants denied Plaintiff's claim, noting that Plaintiff could have been transferred to a closer hospital, namely UCSF Medical Center in San Francisco, California. *Id.* ¶ 57. Defendants subsequently upheld their initial denial, stating: "[Plaintiff's] air ambulance transportation from Boise Idaho to New York City on March 2022 was not prior authorized,[4] was not medically necessary and did not meet the plan criteria for facility-to-facility transportation, and therefore was not a covered benefit." *Id.* ¶ 58; *see also id.* ¶¶ 59-60 (additional reviews and denials because closer hospitals were available).

The SAC alleges that the Plan provides coverage for emergency air ambulance, as relevant here, "when the member's condition requires immediate transportation that cannot be provided by ground ambulance"; such coverage "includes Emergency ambulance transportation . . . by a licensed ambulance service from the location of the sudden illness or injury, to the

---

[3] The Court presumes that Plaintiff submitted the claim, although the SAC oddly alleges that "Defendants submitted invoices to Defendants." *Id.* ¶ 80.

[4] Although the Plan does not require prior authorization for emergency air ambulance services, *id.* ¶ 62, Plaintiff alleges that Defendants orally authorized Plaintiff's transfer to NYU Langone by air transport and confirmed the approval in an email, *id.* ¶¶ 10, 45; Ex. A, Dkt. 3–1. Exhibit A, to which Plaintiff refers, was not attached to the SAC but was attached to the First Amended Complaint at Dkt. 3–1. That exhibit is an e-mail sent from a representative of Defendants that states, in full: "The Prior Authorization (#A152419938) for member Adam Zoia was approved. 'Provided verbal Notice of Approval to the facility representative by voicemail. Informed the approval does not guarantee payment of benefits under the health plan. The determination can only be made by the plan under the terms of the health plan'." Ex. A.

Plaintiff argues that the prior authorization covered the air ambulance transport, Pl. Opp. at 1; SAC ¶ 10; Defendants vehemently deny that allegation, Defs. Mem. at 15 n. 7, Dkt. 34. Defendants state that the "purported" pre-authorization only covered Plaintiff's hospitalization at NYU Langone. *Id.* Exhibit A does not specify what was authorized. Ex. A. The Court need not resolve that factual dispute, however, because, as the "authorization" itself made clear, it did not "guarantee payment of benefits under the health plan."

*nearest hospital* where Emergency Health Care Services can be performed."[5] *Id.* ¶ 62 (emphasis added).

Plaintiff alleges he exhausted all administrative remedies. *Id.* ¶ 64. He also asserts that the letters he received from Defendants rejecting his appeals establish that he did not receive a full and fair review of his claim and as such, his claim should be reviewed under a *de novo* standard. *Id.* ¶¶ 73–76, 83.

## DISCUSSION

### II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). The Court is not required to credit "mere conclusory statements," which "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555), 679.

---

[5] The SAC includes excerpts that Plaintiff claims are part of the Plan's coverage, but it does not cite specific Plan terms or specific Plan documents. SAC ¶¶ 62–63. It is not clear where Plaintiff found these terms, as none is included in the Summary Plan Description ("SPD") (Defendants attached the SPD as Exhibit 1 to the Declaration of Mabel Fairley ("Fairley Decl.") at Dkt. 33). Plaintiff asserts that he "[i]dentifies [t]he Plan [t]erms that Defendants [v]iolated," Pl. Opp. at 11; Plaintiff also alleges, however, that his counsel has made several requests to Defendants for copies of Plaintiff's Plan but has not received a copy, SAC ¶¶ 73–74.

The "denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  The more deferential arbitrary and capricious standard of review applies when a policy confers on the plan administrator the discretionary authority to determine eligibility and to construe the terms of a policy.  *Halo v. Yale Health Plan, Dir. Of Benefits & Recs. Yale Univ.*, 819 F.3d 42, 45 (2d Cir. 2016).  The Court notes that although the SAC asserts that the *de novo* standard should apply because the Plan Administrator failed to provide Plaintiff with a copy of the Plan, neither party briefed which standard applies.  SAC ¶¶ 75–76.

The Summary Plan Description ("SPD") expressly states that "[t]he Plan Administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan to determine eligibility for benefits in accordance with the terms of the Plan."  Fairley Decl., Ex. 1 at 176, Dkt. 33–1.  Because the Plan confers upon the Plan Administrator the discretion to construe the terms of the Plan and to determine eligibility, the arbitrary and capricious standard of review applies.  Even if the Court were to apply the *de novo* standard, however, the outcome would not change, as the unambiguous, uncontested terms of the Plan are outcome determinative.

### III. Plaintiff's ERISA Claim

ERISA section 502(a)(1)(B) provides that a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan."  ERISA § 502(a)(1)(B), 29 U.S.C. § 1132.  Count I of the SAC alleges Defendants violated ERISA when they refused to cover the cost of transporting Plaintiff by air ambulance from Idaho to New York City.  SAC ¶¶ 77–90.

Defendants contend that Plaintiff fails to state an ERISA claim because the SAC does not allege the specific provision of the Plan that he alleges Defendants violated. Defs. Mem. at 9–10, Dkt. 34 (citing *Anjani Sinha Med. P.C. v. Empire HealthChoice Assurance, Inc.*, No. 21-CV-138, 2022 WL 970771, at *3 (E.D.N.Y. Mar. 31, 2022)). The SAC purportedly includes language from the Plan, but, as Defendants note, the language in the SAC does not exist in the Plan documents. *Compare* SAC ¶¶ 62–63 *with* Mabel Fairley Declaration ("Fairley Decl.") at 47, Ex. 1, Dkt. 33–1.[6]

Despite squabbling over the provenance of the exact language included in the SAC, Plaintiff and Defendants agree that coverage for emergency air ambulance transportation is limited to travel to "the *nearest hospital*" at which the needed emergency services can be provided. *See* SAC ¶ 62; Fairley Decl. at 47 (emphasis added). The SAC alleges that because there are no Level I Trauma Centers in Idaho and because NYU Langone was the only hospital that could provide the specialized care that Plaintiff required, air ambulance transport to NYU Langone was covered by the Plan. SAC ¶¶ 41, 54, 65–68; Pl. Opp. at 11–13.[7]

---

[6] Although the Court is generally confined to "the allegations contained within the four corners of [the] complaint," *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017), it may consider materials attached to the complaint or incorporated by reference, documents in Plaintiff's possession or of which Plaintiff had knowledge and relied on in bringing suit, as well as matters appropriate for judicial notice, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Courts have discretion also to consider "information in the movant's papers" in situations in which the "plaintiff has actual notice of all the information" and "has relied upon these documents in framing the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). The SAC alleges that Plaintiff requested a copy of the Plan and that, to date, Defendants have not provided him with one. SAC ¶¶ 73–74. Plaintiff is in possession of the SPD, as it was attached as an exhibit to the Fairley Decl., but it is not clear whether Plaintiff had a copy of the SPD when he commenced this suit, either because he simply did not have access to it or because he believes that the SPD is not the governing Plan document. Because the Plan is incorporated by reference into the SAC, and because the SPD is the Plan itself, *see* Fairley Decl. ¶ 4, the Court may consider it in deciding this motion.

[7] The parties spill much ink arguing whether Defendants are permitted to rely on the SPD to state the terms of the Plan. Plaintiff argues that *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011), prohibits the Plan from relying on the SPD, Pl. Opp. at 5; Defendants argue that the SPD *is* the Plan and that Plaintiff is misreading *Amara*, Defs. Reply at 2–5, Dkt. 42. The Court agrees with Defendants, but this argument is a tempest in a teacup as Plaintiff concedes in the SAC that his Plan only covers air ambulance transport to the *nearest* hospital that can provide the required medical care. SAC ¶ 62.

Accepting Plaintiff's well-pled allegations as true, as the Court must at this stage, they are insufficient to state an ERISA claim. The Plan provides that emergency ambulance transportation is covered when it is medically necessary and the transportation is "to the nearest hospital" where the "Emergency Health Care Services can be performed." Fairley Decl. at 47; SAC ¶ 62. There is no real dispute that air transportation was medically necessary,[8] and Plaintiff adequately and plausibly alleges that the required medical services could only be provided at a Level I Trauma Center. SAC ¶ 41. The SAC veers into implausible territory, however, when it claims that the "specialized care that [Plaintiff] needed could only be provided by the multi-disciplinary team available at NYU Langone, . . . which included highly skilled and specialized physicians." SAC ¶ 68. While the Court does not question the plausibility of the allegation that NYU Langone was capable of providing the highly-specialized, multi-disciplinary care Plaintiff needed, it is both conclusory and implausible to suggest that the care he needed could be provided only by the medical team at NYU Langone. There are many other Level I Trauma Centers that are capable of specialized, multi-disciplinary care that are closer to Idaho than New York City.[9]

In short, because there is no dispute that the Plan covers only air transport to the nearest facility that can provide the required services and because Plaintiff has not plausibly alleged that

---

[8] Although air transportation was medically necessary, under the Plan, among other requirements, a "Medically Necessary" health care service is only a covered expense if it is not "more costly than an alternative . . . service[], [or] service site . . . that is at least as likely to produce equivalent therapeutic . . . results as to the . . . treatment of [the Plan participant's] . . . Injury . . . ." Fairley Decl. at 115. The SAC does not allege that the air ambulance transport to NYU Langone was no more costly than transport would have been to a closer facility that provides the same level of care as NYU Langone.

[9] Other Level I Trauma Centers closer to Idaho than NYU Langone include: University of California, Davis Medical Center; Zuckerberg San Francisco General Hospital and Trauma Center; Los Angeles General Medical Center; North Memorial Health Hospital (Minnesota); University of Utah Health Care; University Medical Center of Southern Nevada; UCHealth University of Colorado Hospital; University of New Mexico Hospital; and Nebraska Medicine – Nebraska Medical Center. *See* Hospital and Facilities, AM. COLL. OF SURGEONS, https://www.facs.org/hospital-and-facilities/.

NYU Langone was the nearest facility that could treat him, he has not stated a cause of action under ERISA section 502(a)(1)(B).[10]

### IV. Leave to Amend

Plaintiff requests that if the Court is inclined to grant Defendants' motion that he be given leave to amend. Pl. Opp. at 14. He claims that he was "left prejudicially bereft of gathering exact terms of the contract upon which Defendants' motion to dismiss is rooted." *Id.* at 15.

Although leave to amend should generally be "freely give[n]," Fed. R. Civ. P. 15(a)(2), "leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citation omitted). Plaintiff has already amended the Complaint twice, and any further amendment would be futile. Plaintiff's claim that he was prejudiced by not having the exact terms of the contract rings hollow inasmuch as the parties agree that coverage under the Plan for air ambulance transport is limited to transportation to the "nearest hospital" that can provide the essential emergency care. Plaintiff has had three chances to plausibly allege that NYU Langone was the closest hospital that could provide the emergency services that he required. A fourth opportunity is not necessary. In short, leave to amend is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the open motion at docket entry 32 and close the case.

---

[10] Plaintiff raises many other arguments that need not be addressed as his claim founders at the threshold. Because the Court grants Defendants' motion to dismiss, it need not analyze whether some of the Defendants are improperly joined. *See* Defs. Mem. at 16.

**SO ORDERED.**

Date:  **January 23, 2025**
       **New York, New York**

                                                **VALERIE CAPRONI**
                                                **United States District Judge**